UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 22 CR 574-9 |
| v. | |
| PERRY MAPLE | Judge Robert W. Gettleman |

### GOVERNMENT'S SENTENCING MEMORANDUM

For over a year, defendant and his nine co-defendants terrorized the south suburbs of Chicago by repeatedly committing brazen armed robberies of armored trucks in broad daylight. Each of these robberies was terrifying and could have easily resulted in innocent victims getting shot. Defendant's involvement in these robberies was not a one-time mistake. He committed three robberies over the course of 15 months. He carried and used guns to commit robberies. In one brazen daytime robbery, he held a gun just a few feet away from a terrified victim as he and a co-defendant stole cash from an ATM.

The gravity of defendant's actions, as well as the need to protect the public and deter defendant and others from similar conduct, warrant a significant sentence. The government requests a sentence of 219 months. While this sentence is significant, it is at the bottom of the Guidelines range. This recommendation thus recognizes defendant's youth, his lack of criminal history, and the possibility of rehabilitation. But this request should not be taken to minimize defendant's abhorrent conduct or the need for a lengthy custodial sentence. A sentence of 219 months is appropriate. It will provide justice for his victims, will ensure he does not harm others again, and is

sufficient but not greater than necessary to satisfy the goals set forth in the Sentencing Guidelines and 18 U.S.C. § 3553(a).

## I.      PROCEDURAL HISTORY

On July 9, 2024, an indictment was returned charging defendant with conspiracy to commit Hobbs Act robbery (Count One), two Hobbs Act robberies (Counts Six and Eight), and two counts of brandishing a firearm during a crime of violence (Counts Seven and Nine). Dkt. 182. On March 26, 2026, defendant pled guilty by plea agreement to Counts Six, Seven, and Eight. Dkt. 339.

## II.     GUIDELINES CALCULATIONS

The government has no objections to the PSR prepared by the United States Probation Office ("Probation") and agrees with the offense level, criminal history, and advisory Guidelines calculations therein. Specifically, the government agrees with Probation that the total offense level is 33. PSR ¶ 70. The government also agrees with the criminal history calculations set forth in the PSR (PSR ¶ 77), and asserts that defendant has zero criminal history points, and his criminal history category is I.

With a total offense level of 33 and a criminal history category of I, the advisory sentencing Guidelines range is 135 months to 168 months, in addition to any supervised release, fine, and restitution the Court may impose. PSR ¶ 126. Defendant is also subject to a mandatory minimum sentence of 84 months on Count Seven, which must be served consecutively to the sentence imposed on his other counts. *Id.* ¶¶ 124-26. Defendant's total Guidelines range is 219 to 252 months. *Id.* ¶ 126.

### III. THE SECTION 3553(a) FACTORS SUPPORT A SENTENCE OF 17 YEARS' IMPRISONMENT

The Sentencing Guidelines provide a starting point and initial benchmark for sentencing. *Gall v. United States*, 552 U.S. 38, 49-50 (2007). The Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Id.* at 46. The Guidelines thus "remain an essential tool in creating a fair and uniform sentencing regime across the country." *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005); *see also United States v. Pulley*, 601 F.3d 660, 668 (7th Cir. 2010) (a "district court that sentences within the Guidelines necessarily gives weight and consideration to avoiding unwarranted disparities."). The ultimate goals of the Guidelines are "uniformity and proportionality." *Rita v. United States*, 551 U.S. 338, 349 (2007).

Here, the Guidelines range is high. But it is high for a reason. It is high because defendant stole an extraordinary amount of money. It is high because defendant committed multiple extremely violent and dangerous crimes that put several innocent lives in peril. It is high because defendant used guns and stole guns during his crimes. In short, the Guidelines range is high, but a sentence of just over 18 years, at the bottom of the Guidelines range, is appropriate given defendant's actions. Defendant may not have committed crimes before this robbery spree, but over the course of a year, he repeatedly chose to put innocent victims in danger all for a quick payday. Defendant's crimes were serious and they require a significant sentence.

### A. The Nature and Circumstances of the Offense Justify a Significant Sentence

The seriousness of defendant's offense cannot be overstated and alone warrants a significant period of incarceration. Along with his co-conspirators, defendant repeatedly and violently robbed armed armored truck couriers and ATM technicians at gunpoint. "A robber with a loaded gun . . . places lives at risk because of the prosect that, should the need or impulse arise, he will commit murder." *United States v. Ray*, 21 F.3d 1134, 1141 (D.C. Cir. 1994). By brandishing a firearm, defendant "empowered himself to turn the scene violent at will." *Id*. "His threat not only magnifies the chances that he will do just that if anyone gets in his way but also increases the likelihood of a violent response." *Id*. As the Seventh Circuit has noted, "[o]nce the gun is in the defendant's hands he need only pull the trigger, an act which can be completed in a split second and which is controlled and influenced by nothing more than the defendant's whim." *United States v. Mathews*, 520 F.3d 806, 809 (7th Cir. 2008) (quotation omitted).

Here, defendant's robberies epitomize the risk described by the Seventh Circuit. Each robbery was a high-stakes, high-reward robbery, and defendant willingly risked getting into a deadly shootout for the chance at hundreds of thousands of dollars in stolen proceeds. In the first robbery, on January 6, 2022, defendant and his co-defendants, Elijah, Corrie, and Darrell Singleton, robbed an ATM technician at a Bank of America in Calumet City in broad daylight at 11 a.m. Defendant was the driver. While defendant stood by in the car watching, the three

Singleton brothers pointed guns at the ATM technician and removed cassettes from an ATM. Defendant and his co-defendants got $129,050 from this robbery.

If that were the only robbery defendant committed, he may have been able to claim that the robbery was a one-time mistake or that he joined friends that day not knowing the full extent of the criminal plan. But one robbery was not enough for defendant. A year later, defendant and Darrell Singleton committed another violent robbery. This time defendant took an active and aggressive role. On February 24, 2023, in the middle of a Friday afternoon, defendant and Singleton drove to a Citi Bank in Calumet City in a stolen Infiniti sedan. Defendant knew the car was stolen and often helped obtain stolen cars to use in robberies. The Citi Bank is in a crowded shopping plaza with other banks, a car dealership, restaurants, and a kids' hair salon. It is adjacent to a residential community.

An ATM technician was servicing an ATM and defendant and Singleton burst out of the Infiniti with guns drawn. An innocent customer was mere feet away, withdrawing money from another ATM. Singleton shoved the technician to the ground and pointed a gun in his face. While the technician cowered in fear, defendant held a gun, pointed in the direction of the technician lying on the ground just a few feet away, and removed cassettes from the ATM. Defendant and Singleton escaped with approximately $155,000. They split the proceeds and defendant received about $75,000. After the robbery, defendant and Singleton doused the stolen Infiniti in flammable liquid and attempted to burn the car to cover up their crimes.

5

The government will provide the Court with videos of this terrifying robbery as exhibits at sentencing. As shown in the screenshots of the videos, this was a violent robbery that showed a complete disregard for human life. Singleton is in a black jacket and defendant (circled below) is in an orange sweatshirt with blue gloves and a gun in his right hand.





At this point, defendant and his co-defendants had stolen almost $400,000 in two robberies. Defendant could have kept his money and stopped harming others. But he did not. Just a week later, defendant was the driver for another violent robbery. On March 4, 2023, defendant, Darrell Singleton, Aveon Wilson, and another robber held up an armed armored truck guard at gunpoint. Again, this robbery was brazen and violent. It took place on St. Patrick's Day weekend in a crowded suburban shopping mall as multiple innocent bystanders stood outside a nearby bar.

The government will provide the Court with videos of this robbery as exhibits at sentencing. The videos show defendant, standing by in the driver's seat of yet another stolen car, as his co-defendants forced an armed guard into an armored truck and robbed him of $379,301. One of the robbers pointed his gun directly at an innocent bystander. Again, this was another violent robbery that showed a complete disregard for human life. The armored truck guard in this robbery was visibly terrified as the robbers held guns with extended magazines to his body and yelled threats at him while he tried to comply with their orders. Below is a screenshot of the robbery from surveillance video of the inside of the armored truck showing co-defendant Aveon Wilson holding the armed guard at gunpoint while they stole the money:



These robberies were violent, seriously dangerous, and extremely lucrative. Defendant's three robberies yielded over $700,000 in stolen proceeds. Motivated only by his own greed, defendant showed a complete disregard for human life. He and his co-conspirators robbed trained guards armed with loaded guns. The robbers were prepared to use their own guns to hurt the guards and bystanders if necessary.[1] These robberies traumatized the guards, put innocent bystanders at risk, and punctured the sense of safety in suburban communities.

A significant sentence is necessary to ensure that defendant never again commits a violent crime and puts innocent lives at risk. When considering only

---

[1] Indeed, in a later armed robbery charged in this conspiracy, defendant's co-conspirators did get into a shootout with an armed armored truck guard. Defendant was in custody at the time of that robbery.

defendant's extreme conduct in this case, a sentence toward the top of the advisory Guidelines range would be easily justifiable.

### B. Defendant's History and Characteristics

Defendant's history and individual characteristics do offer mitigation. Defendant grew up in a stable family in Texas and Chicago. PSR ¶¶ 82-85. He has a good relationship with both his parents. *Id.* He graduated high school, and at the time of his arrest, was employed in a stable job as a forklift operator. PSR ¶¶ 111-116. Defendant has no criminal history of arrests or convictions. As the Court is surely aware, this is highly unusual in violent crime cases. Defendant is also very young.

Yet, it is troubling that defendant escalated so quickly from never having been arrested to committing violent armed robberies. It is also aggravating that defendant committed multiple robberies over a period of several months. This shows that his bad decision-making was not a one-time mistake. Committing armed robberies was part of his way of life, and he likely would have committed more robberies had law enforcement not arrested defendant and his co-conspirators. Further, defendant's disciplinary history while incarcerated shows that he has not used his time in custody to reflect on his choices and make better decisions. Since his arrest, defendant has received citations for being in possession of a flash drive containing pornographic material, refusing to work, and disobeying orders. ¶ 8.

Ultimately, defendant's lack of criminal history, his youth, and his employment history offer mitigation and real hope for rehabilitation. Those factors warrant a sentence at the bottom of the Guidelines range. But the mitigation does

not warrant a substantial downward departure from the range. Defendant's escalating criminal history, his involvement in multiple robberies, and his behavior while in custody, all raise a significant concern that he will recidivate upon his release. Defendant was just 19 and 20 years old when he committed the charged crimes, and he is 23 years old now. According to the United States Sentencing Commission's report *Youthful Offenders in the Federal System*, youthful offenders have the highest recidivism rate of all federal offenders, with defendants sentenced between ages 21 and 25 having a 65.6% recidivism rate.[2] Because of the significant risk that defendant will return to criminal activity upon his release at a relatively young age and the need to ensure he ages out of his dangerous criminal conduct, a sentence of slightly more than 18 years is needed in order to adequately deter defendant. A sentence far below the Guidelines range would send the wrong message to defendant, society, and the victims.

## C.     A Significant Sentence is Necessary to Afford Adequate General Deterrence

"Sentencing judges must consider, among other things, the need for a sentence 'to afford adequate deterrence to criminal conduct.'" *United States v. Arroyo*, 75 F.4th 705, 708 (7th Cir. 2023), quoting 18 U.S.C. § 3553(a)(2)(B). "The idea of general deterrence, put simply, is that the longer the sentence, the more it will discourage similar criminal conduct by others." *Id.*

---

[2] United States Sentencing Commission, *Youthful Offenders in the Federal System* (May 25, 2017), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20170525_youthful-offenders.pdf, at 49 (last accessed April 18, 2025).

A significant sentence is warranted here to afford adequate deterrence for the public. Defendant's robberies garnered significant media and social media attention. It is important to send a message to the community that although robberies of ATMs and armored trucks may hold the allure of being highly lucrative crimes, they carry stiff consequences that outweigh any prospect of personal gain. "General deterrence is, after all, an economic theory of punishment: 'Where the profits to be made from violating a law are higher, the penalty needs to be correspondingly higher to achieve the same amount of deterrence." *Arroyo*, 75 F.4th at 708, quoting *United States v. Cavera*, 550 F.3d 180, 196 (2d Cir. 2008). Unlike an impulsive shooting resulting from an argument, armed robberies are pre-planned and lucrative—in just a few minutes, defendant and his co-conspirators stole hundreds of thousands of dollars—and a significant sentence will deter future potential robbers who may believe the risks of such a robbery are worth the potential reward.

## IV.   COMPARITIVE CULPABILITY

As discussed above, defendant and nine co-defendants are charged in this case with 11 robberies and one attempted robbery that occurred between October 2022 and November 2023. While the robberies followed a similar *modus operandi*, each robbery was unique in the danger it posed to victims and each defendant's role in the robberies and history and characteristics are also unique. The government will assess each defendants' culpability individually at their respective sentencings.

One co-defendant has been sentenced in this case, Corrie Singleton. The government recommended a sentence of 17 years, and Singleton received a sentence of 15 years, slightly below the Guidelines range. Corrie Singleton and defendant are

11

similar in some ways. They both have limited criminal histories and were young at the time of their offenses. These factors offer some mitigation compared to other defendants in this case. Like Corrie Singleton, however, this mitigation is limited because of the violent nature of the robberies. Here, defendant committed three separate robberies, all of which involved guns, dangerous showdowns with victims, and hundreds of thousands of dollars in robbery proceeds. Given defendant's conduct, a sentence of just over 18 years is appropriate.

## V.    SUPERVISED RELEASE

The government agrees with Probation's recommendation that the Court impose a period of supervised release of three years. The government agrees with the supervised release conditions set forth in the PSR, which are narrowly tailored to facilitate supervision by the probation officer, deter the defendant from future crimes, support defendant's rehabilitation and reintegration into the community, and ensure that he is engaged in lawful pursuits rather than criminal activity. Given defendant's history and characteristics, his offense conduct, and the purposes of sentencing set forth in 18 U.S.C. §§ 3553 and 3583, the government joins Probation in requesting that the defendant be required to comply with the conditions of supervised release set forth in the PSR.

## VI.    RESTITUTION

Pursuant to 18 U.S.C. § 3663A, restitution is mandatory in this case. In his plea agreement, defendant agreed to pay restitution in an amount determined by the Court at sentencing. The government is requesting that defendant be ordered to pay

restitution to Citibank in the amount of $155,000, to Brink's in the amount of $379,301, and to Bank of America in the amount of $129,050.

## VII. CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court sentence defendant to 219 months' imprisonment, to be followed by three years of supervised release. Such a sentence is sufficient, but not greater than necessary, to satisfy the 18 U.S.C. § 3553(a) sentencing factors.

Respectfully submitted,
ANDREW S. BOUTROS
United States Attorney

By: /s/ Elie Zenner
ELIE ZENNER
SIMAR KHERA
Assistant United States Attorneys
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604

13